IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                        CRIMINAL ACTION NO. 3:16-00027

JEREMIAH EUGENE CALDWELL

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Jeremiah Eugene Caldwell's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) for compassionate release. ECF No. 57. The United States has responded and opposes the motion. For the following reasons, the Court agrees with the United States and **DENIES** Defendant's motion.

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended Section 3582 and enabled courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. However, before defendants may request such a reduction, they must ask the Federal Bureau of Prisons (BOP) to do so on their behalf. *See* 18 U.S.C. § 3582(c)(1)(A). If the BOP denies the defendant's request or does not respond within thirty (30) days, the defendant may file a motion before the court. *Id*.

If an inmate satisfies the administrative exhaustion requirement, courts may reduce the inmate's sentence if there are (1) "extraordinary and compelling reasons," (2) "the defendant

is not a danger to the safety of any other person or to the community," and (3) release is consistent with the factors identified under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c); U.S.S.G §1B1.13 (2018).

During the COVID-19 pandemic, courts also have recognized that compassionate release is appropriate where an inmate has shown both a particularized susceptibility to the virus and a particularized risk that he will contract the virus at his facility. *See, e.g.*, *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) ("In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility."); *United States v. Eberbaugh*, No. CR 2:18-00222-02, 2020 WL 4804951, at *3 (S.D. W. Va. Aug. 18, 2020) (considering "the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility" to determine if compassionate release is appropriate).

In this case, Defendant was sentenced on August 8, 2016, to 57 months of imprisonment and a three year term of supervised release following his plea to possession with intent to distribute a quantity of heroin. On June 15, 2020, Defendant was released and began serving his term of supervised release. Thereafter, from January 19, 2021 through May 10, 2021, Defendant had five noncompliance summaries filed against him alleging positive drug tests, failure to participate in drug testing, an arrest for petit larceny and attempt to commit a misdemeanor, citations for various traffic violations, and a failure to notify his probation officer within seventy-two hours of being arrested or questioned by law enforcement for the traffic citations.

On June 14, 2021, a Petition for Warrant or Summons for Offender Under Supervision was filed against Defendant, alleging he failed to appear for his hearing on the charge of petit larceny and attempt to commit a misdemeanor and a capias was issued for his arrest. The Petition also summarized his positive drug screens, failure to maintain employment, failure to timely inform his probation officer about his interaction with law enforcement, and his failure to participate in drug testing and treatment, including a residential treatment program he was scheduled to begin on June 9. On July 6, an Amendment to the Petition was filed against him alleging, inter alia, that he left the judicial district without permission and was arrested and pled guilty to operating a vehicle under the influence in Ohio. Defendant also entered a Nolle Prosequi to other Ohio charges of obstructing official business, fictious registration, no seat belt, and a failure to comply with order or signal of a police officer.

On July 12, the Court held a revocation hearing. At the hearing, Defendant admitted to the violations, "except as to the charge of petit larceny and attempt to commit a misdemeanor . . . and as to the allegation that he failed to regularly work." *Revoc. of Sup. Release and J. Order*, at *1 (July 12, 2021), ECF No. 54. Therefore, the Court found Defendant had violated the terms of his supervised release and committed him to the custody of the Federal Bureau of Prisons for a term of 15 months. Upon his release from prison, the Court ordered Defendant be placed on a term of supervised release for 21 months. *Id*.

On September 17, 2021, Defendant requested the warden grant him compassionate release because he was exposed to carbon monoxide while incarcerated, which he claims has caused him hearing and breathing problems. *Request by Def.* (Sept. 17, 2021), ECF No. 61-1. The

warden denied the request on September 20, 2021, and informed Defendant that he could file an administrative appeal. *Denial of RIS Request* (Sept. 20, 2021), ECF NO. 57-2. There is nothing in the record indicating Defendant filed an administrative appeal.

Instead, on October 21, 2021, Defendant filed the current motion in this Court seeking compassionate release due to his alleged problems from carbon monoxide exposure and his elevated fear of contracting COVID-19. He also seeks release on the grounds that he claims he provided financial support for his family and his wife is pregnant with the couple's third child. Defendant attached to his motion a proposed release plan stating he will be employed by "Caldwell Son & Towing" if released.[1]

The United States initially argues in a footnote that Defendant has not met the exhaustion requirement contained in § 3582(c)(1)(A). This section provides that the Court may reduce Defendant's term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A), in part. As there is no record that Defendant exhausted his administrative remedies and he signed the current motion on October 10, 2021, which was before the expiration of the thirty-day period, the United States argues Defendant's request for relief is barred by § 3582(c)(1)(A)'s exhaustion requirement. Upon review, the Court disagrees.

---

[1] At the supervised release revocation hearing, Defendant stated he was self-employed as a tow truck driver. It appears that, if released, he intends to resume this occupation.

Although Defendant dated his motion on October 10, it was not filed with the Court until October 21, 2021, which was beyond the required thirty-day requirement. "The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021). Therefore, the Court concludes Defendant fulfilled the statute's exhaustion requirement because his motion was filed more than thirty days after the warden received his request.

Turning next to the merits of Defendant's claim, Defendant alleges he is particularly susceptible to COVID-19 due to his exposure to carbon monoxide. The United States has submitted Defendant's BOP medical records which show Defendant was exposed to carbon monoxide on August 10, 2021, when there was a leak in his housing unit. The following day Defendant was assessed by a registered nurse. During his first assessment, the nurse noted that Defendant reported a headache and nausea, and he was given an over-the-counter Tylenol. Later that day, Defendant stated he was feeling better, but he still had a headache. Defendant was prescribed a single 800 mg. ibuprofen tablet. On August 16, 2021, Defendant was examined by Dr. Rickey Bradley. Dr. Bradley deemed Defendant to be non-critical, with no need for emergency room treatment. There are no indications in any of these clinical notes that Defendant was suffering from any pulmonary or hearing issues. Additionally, the United States asserts there are no records indicating Defendant needed any medical attention after August 16, 2021, or he experienced any long term effects from his carbon monoxide exposure.

As Defendant's argument that he is particularly susceptible to COVID-19 rests entirely on his exposure to carbon monoxide, the Court finds he has failed to meet his burden to show that "extraordinary and compelling reasons" reasons exist under § 3582(c). Defendant has not shown his exposure has had any long-term effects or increased his risk of disease. Moreover, the records reveal that Defendant was offered but declined to receive the COVID-19 vaccine. The efficacy of vaccination is high and, although Defendant was given the choice of whether or not to be vaccinated, his decision to forego vaccination does not justify release.

The Court further adds that the statistical evidence available from FCI McDowell, where Defendant is being held, indicates the facility currently is handling the crisis exceptionally well. Presently, there are no inmates or staff reported as positive. *See* https://www.bop.gov/coronavirus/index.jsp (last visited December 21, 2021). A total of 356 inmates and 61 staff members previously tested positive for COVID-19 and have since recovered. *Id*. There also has not been an inmate or staff member death at the facility attributed to COVID-19. *Id.* A total of 172 staff members and 1,074 inmates at FCI McDowell are fully vaccinated against COVID-19. *Id*

Turning to Defendant's second argument for compassionate release, he argues he should be released to provide financial support for his family. However, the Court finds this argument is neither an extraordinary nor a compelling reason under § 3582(c) to warrant release. Moreover, it is less than certain Defendant will be able to provide such support by virtue of his proposed self-employment.[2] Therefore, the Court denies release on this ground.

---

[2] Defendant has made no attempt to show he even could be licensed and adequately insured

Lastly, the Court finds that Defendant has not shown he "is not a danger to the safety of any other person or to the community" if released. 18 U.S.C. § 3582(c). Defendant has a long criminal history and, within one year of beginning his term of supervised release, he had a number of supervised release violations, including several positive drug screens and an arrest and guilty plea to operating a vehicle under the influence in Ohio. Defendant has made no showing that he has overcome his addiction and will not pose a threat to the community if released.

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) for compassionate release. ECF No. 57.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney's Office, the United States Probation Office, and the United States Marshal.

        ENTER:     December 21, 2021

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE

---

to operate a tow truck in light of his drug use, traffic citations, and operating a vehicle under the influence conviction.